Roten and Thompson v. The State of Florida.—Syllabus.

CALEB ROTEN AND RICHARD THOMPSON, PLAINTIFFS IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. In the case of homicide it is essential to the admissibility of dying declarations of the deceased that they were made under a sense of impending death, and this is a preliminary fact to be shown to the court by the party offering them. This question is one of law to be exclusively decided by the court, and the accused has the right to have the decision of the court directly upon the point. It is error for the court to avoid the decision and shift the responsibility upon the jury.

2. Where the defense interposed by the accused in a prosecution under an indictment for murder is that they were officers of the law, and killed the deceased in necessarily overcoming his actual resistance to the execution of valid process, issued for his arrest on a charge of violating the criminal law of this State, and placed in their hands for execution, it is error to permit the State to introduce evidence tending to show that the deceased was not guilty of the charge contained in the warrant issued for his arrest and placed in the hands of the proper officer for execution. This is a matter cognizable entirely in a direct proceeding by the court having jurisdiction of the offense charged in the warrant.

3. An objection to the language of the trial judge addressed to the accused before making his statement to the jury, to the effect that what he says must be the truth, should be made at the time in the lower court, and it cannot be urged for the first time in the appellate court.

4. Testimony as to the character of the deceased for violence is not admissible until the proper foundation is laid for its introduction.

Writ of Error to the Circuit Court for Monroe county.

The facts in the case are stated in the opinion of the court.

*Macfarlane & Pettingill* for Plaintiffs in Error.

*The Attorney-General* for Defendant in Error.

MABRY, J.:

The plaintiffs in error were jointly indicted in the Circuit Court for Monroe county for the murder of Rudolph W. Raymond—Roten as committing the crime, and Thompson as being present, aiding, counseling and procuring the commission of the same. They were jointly tried upon this indictment and both found guilty of murder in the first degree, with a recommendation of mercy to the court. They bring the case before us for review by writ of error.

There is such manifest error in the record as to necessitate a reversal of the judgment in this case.

The deceased, Raymond, resided in 1892, at Chatham Bend, Monroe county, Florida, and received the wounds, from the effects of which he died, near that place. A justice of the peace residing in the city of Key West issued a warrant for the arrest of the deceased on a charge of enticing away an unmarried female for the purpose of prostitution, contrary to the statute in such cases provided, and placed it in the hands of the sheriff of Monroe county to be executed.

The sheriff delivered the warrant to Roten, as deputy sheriff, with instructions for him to go to Chatham Bend, arrest the deceased and bring him to Key West. Chatham Bend is some distance from the city of Key West, and the way of reaching it is by boat. The accused, Thompson, was requested by the sheriff to go with Roten to Chatham Bend for the purpose it seems, of assisting in the management of the boat, and aiding in making the arrest. Roten was deputy sheriff, and was sworn as such, but Thompson was not sworn or appointed as deputy. The accused and the deceased met on the water near Chatham Bend, the former being in one boat, and the latter in company with a man named Gerock being on another. The deceased received two shots, from the effects of which he subsequently died. We will not detail the circumstances attending the shooting, as the disposition we make of the case does not call for an expression of opinion by us in reference to the effect of the testimony. It is sufficient to say that the theory of the prosecution is that the accused shot the deceased without informing him that they had a warrant for his arrest; and without commanding him to submit to arrest, and that the killing was unlawful and without excuse. On the contrary, the defense set up by the accused is that they were acting in obedience to the commands of the warrant placed in their hands by the sheriff, and that the deceased was shot in necessarily overcoming his actual resistance to the execution of this process. After the warrant had been in-

JANUARY TERM, 1893.          517

Roten and Thompson v. The State of Florida.—Opinion of Court.

troduced in evidence on the part of the defense, and the accused had made their statements and closed their evidence, the widow of the deceased was introduced by the State in rebuttal, and asked if she knew a girl by a certain name, for the enticing away of whom a warrant had been issued for the arrest of the deceased, and answering that she did, she was further asked: "Who took that girl away from this island of Key West?" This question was objected to, and the objection being overruled by the court, exception was taken. The witness then testified that the girl wanted to go and she went at request of witness; that her husband was at the boat and did not know anything about it until witness got the girl to the boat. The only purpose this testimony can subserve in this case is to show that the deceased was not guilty of enticing away the girl, for doing which the warrant had been issued for his arrest. That the admission of this evidence was improper and calculated to injure the accused, is apparent.

In Post vs. Bird, 28 Fla., 1, 9 South. Rep., 888, it was said that "where process is good upon its face, and emanates from a court of competent jurisdiction, the officer who executes it according to its exigency will be protected under it;" and also, "it does not comport with law or correct policy to permit an executive officer to pass judgment upon a proceeding of a court of competent jurisdiction whose process he is required to execute, and obey it or not as he may judge best." Where the process is not void on its

face, or where the officer does not know that the process is void, and it is issued by a court of competent authority, it is essential to the orderly administration of law that it be implicitly obeyed by the officer to whom directed, and as a consequence when he does obey it he will not be responsible for anything properly and necessarily done in its execution. Hann vs. Lloyd, 50 N. J (Law), 1 ; State vs. Weed, 21 N. H., 262, 53 Am. Dec., 188. If the officer is not permitted to look beyond the writ in determining whether or not he will execute it, it becomes perfectly clear that in proceedings against him on account of his acts in executing the writ it is improper to inquire into the guilt or innocence of the party named in the process. This is a matter cognizable entirely in a direct proceeding by the court having jurisdiction of the offense charged in the warrant.

Again, the State offered in evidence a written statement purporting to be the dying declaration of the deceased, as to the circumstances of the killing, sworn to some two or three days before his death before a justice of the peace. This statement was objected to by the defendants on the ground that the deceased was not certain, at the time it was made, of his death, and that it had not been shown that the statement was his dying declaration. Before the statement was offered in evidence, the justice of the peace before whom it was sworn to was examined as to the circumstances under which the deceased made it, and also as to

JANUARY TERM, 1893.                519

Roten and Thompson v. The State of Florida.—Opinion of Court.

whether or not the writing contained what the deceased did say. The ruling of the court on the objection of the defendants to the introduction of this statement in evidence as a dying declaration, is expressed in the following language, *viz.*: "The court overruled the objection and rendered his opinion and decision that the question of whether the document offered was admissible under the proof as the dying declaration of the deceased was a matter of fact to be determined by the jury along with the other evidence in the case, under the instructions of the court as to what constitutes a dying declaration, and its admission was not a matter of law to be decided by the court, and therefore the court would let it go to the jury for what it was worth, under such instructions as the court might give." Exception was taken to this ruling of the court. The statement was then read in evidence to the jury as the dying declaration of the deceased. The court instructed the jury that dying declarations are admissible, and when admitted are to be treated by the jury as they would any other evidence in the case.

It is evident from what has been stated, that the question of the admissibility of the statement as a dying declaration was referred to the jury and was not decided by the court. This decision was in conflict with the rule of law on this subject, as clearly stated in the case of Dixon vs. State, 13 Fla., 636. The first head-note in this case is as follows: "Under an indictment for homicide, where the prosecutor seeks to introduce a dying declaration of the deceased

in evidence, it should be first shown to the satisfaction of the court that at the time the declarations were made the deceased not only evidently considered himself in imminent danger, but that he evidently believed he was without hope of recovery. The circumstances under which the statements were made must be shown, in order that the court may determine whether the statements should be given to the jury as dying declarations." In the opinion it is said : "The circumstances under which the deceased made statements must of necessity be shown in order that the court may determine whether the statements were 'dying declarations,' and proper to be given in evidence to the jury. Whether these declarations are admissible in evidence is exclusively for the court to determine."

It is essential to the admissibility of these declarations that they were made under a sense of impending death, and this is a preliminary fact to be proved by the party offering them. The question is one of law to be decided by the court, and the accused has the right to have the decision of the court directly upon the point. It is error for the court to avoid the decision and shift the responsibility upon the jury. 1 Greenleaf on Evidence, sec. 160; Donnelly vs. State, 26 N. J. (Law), 463. We do not express any opinion as to the effect of the evidence in reference to the admissibility of the statement as a dying declaration, further than to say that it was of such a nature as to call for the decision of the Circuit Judge, and the ruling can not be said to be error without injury.

Roten and Thompson v. The State of Florida.—Opinion of Court.

Before the accused, Roten, made his statement, the court addressed him in the following language: "Caleb Roten, in making your statement to the jury no one will be allowed to ask you any questions. You may state what you see proper to state, and leave unsaid anything that you do not wish to say, but what you do say must be the truth; and when you are through, take your seat back of your counsel." The same in substance was stated by the court to Thompson before he made his statement. It is assigned for error here and contended that it was error for the court to use the language—"but what you do say must be the truth"—as its effect was to discredit the statement of the accused before the jury. We can not consider this assignment of error. No objection of any kind was made to the language of the judge in the trial court, and the objection is presented here for the first time. This comes too late. The court can avoid any difficulty of this kind in the next trial by consulting the decisions of this court cited below, as to the nature of statements made by defendants: Newberry vs. State, 26 Fla., 334, 8 South. Rep., 445; Hawkins vs. State, 29 Fla.. 554, 10 South. Rep., 822 ; Ortiz vs. State, 30 Fla., 256, 11 South. Rep., 611.

Another assignment of error is, that the court erred in excluding from the jury the testimony of C. F. Dupont, sheriff of Monroe county, as to the information he gave the defendants regarding the character of the deceased. Dupont was the sheriff who delivered the warrant to the defendants, with instructions to arrest

the deceased. The defense proposed to prove by this witness that he told defendants when the warrant was delivered to them, to be careful, because the deceased had the reputation of being a bad man, and that Roten was selected to execute the warrant because he was a discreet man. Upon objection to this testimony by the State the jury under the instructions of the court retired, and the witness stated that he had known Roten from his boyhood, and knew him to be a man of discreet character. The reason why he said that the deceased was a bad man was because he was out under bail on a charge of shooting at a man with intent to kill, and had failed to appear at court, and it was rumored all around on the streets that he had said he would not be arrested. And also that witness had in his possession documents to show that the deceased had been released on bail, and had failed to appear and answer the charge against him. The court ruled on this objection that it was admissible to show that the witness instructed defendants to be careful, but that statements as to the reputation of deceased, and why he had that reputation, and that Roten was a discreet man, were not admissible. Exceptions were taken to this ruling.

It is contended for the plaintiffs in error that the portion of the excluded answer assigned as error, to-wit: the information given by the sheriff to the defendants, regarding the character of the deceased, was material and admissible. The bad character offered to be shown in connection with the general rumor in Key West that the deceased had said he would not submit

to arrest, it is claimed, is material and competent evidence. No contention is made that the other portions of the proposed evidence and excluded by the court should have been admitted, and hence we need look only as to the admissibility of the proposed testimony in reference to the character of the deceased. After the State rested her case, the defendants introduced the witness, Dupont, and proposed to prove by him the facts excluded by the court as above given. The testimony introduced by the State showed that one of the defendants fired on the deceased before anything was said to him except "Round to there, Raymond," or "Round to that schooner, Raymond." After the first fire the deceased jumped down into the companionway of his boat and one of the defendants soon thereafter came aboard of the boat and more firing ensued. There was nothing in the State's testimony to show any hostile act or demonstration on the part of the deceased before he was first fired on, and nothing to show such demonstration on his part until he was shot at the second time, except to jump into the companionway of the boat.

Conceding here that the testimony as to character is sufficient in itself, such evidence is not admissible unless the foundation is first laid for its introduction. Garner vs. State, 28 Fla., 113, 9 South. Rep., 835; Garner vs. State, 31 Fla., 170, 12 South. Rep., 638. Subsequent to the proposed testimony of Dupont, the defendants made statements, but at the time Dupont's evidence was proposed, there was no offer on the part of defendants to show any overt act or hostile demon-

:stration on the part of the deceased, other than what appeared from the State's evidence, nor was there any renewal of the proposed testimony of Dupont after the statements were made. We are, therefore, not called upon to consider the effect of such statements as laying the foundation for the introduction of evidence in reference to character. There was, in our judgment, no evidence before the court at the time of the ruling rejecting the proposed testimony of Dupont, showing any hostile demonstration on the part of the deceased before he was fired on, and hence there was no foundation then for the introduction of the proposed testimony in reference to character. On the condition of the record here there was no error in the ruling of the court in this assignment of error.

There are several exceptions to the charges of the court to the jury, but there is only a partial discussion of these exceptions here. Counsel who have filed a brief for plaintiffs in error say in their brief "as our associate counsel have submitted a brief upon the grounds relating to the defendants' rights as officers in the discharge of their duty, as distinguished from the rights they would have had as private citizens, we will pass over the instructions given and refused upon that question, and will content ourselves with the dis--cussion of one more point," which is mentioned and discussed. We find no brief on file discussing the charges passed over, and in view of this fact, and the further fact that the case will have to be reversed for the errors already mentioned, we will refrain from

any discussion of the charges in this case. On the next trial the court can adjust its charges to such a. state of facts as may be given in evidence without reference to the approval or disapproval by us of the charges given on the former trial.

For the errors pointed out, the judgment is reversed and a new trial awarded. Ordered accordingly.