R. R. RICHARD, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Dying declarations of a person mortally wounded, in reference to the circumstances that caused death, in cases where the death of the declarant is the subject of investigation, are admissible in evidence when the declarant is in extremity, believes death is imminent, and is without hope of recovery; and the circumstances under which the declarations are made should be shown, in order that the court may determine whether or not they are proper to go to the jury as "dying declarations."

2. The fact that dying declarations are made in response to questions asked the declarant is no ground for excluding them; nor is it material, as to their admissibility, that the questions are omitted, and the answers only given, when they are reduced to writing, read over, and signed by declarant.

3. It is not error to deny a motion to exclude or strike out a statement offered as a dying declaration when a portion sought to be excluded is admissible, though another portion may be objectionable. The proper practice in such a case is to confine the objection to the inadmissible portion.

4. In considering exceptions to portions of charges, they should all bearing on the subject, be considered in connection with each other.

5. The correctness of a charge on the subject of murder in the first degree becomes immaterial where the jury reject entirely the theory of the case presented by the charge, and render a verdict for manslaughter.

6. It is proper to refuse requests based upon a state of facts not shown by the evidence.

7. When the entire scope of requests to charge has been covered by charges given, it is not error for the court to refuse to repeat the charges in substance, though differing in phraseology.

8  Where two persons are jointly indicted and tried, and one is acquitted and the other convicted, the correctness of charges applicable in terms solely and exclusively to the one acquitted cannot be questioned by the one who was convicted.

9.  A brother is not included among the domestic relations enumerated under the second head of the second division of section 2398 Revised Statutes, in behalf of whom a person may defend, not only when absolutely necessary to protect life, but also when there shall be a reasonable ground to apprehend a design to commit a felony, or do some great personal injury, and there shall be imminent danger of such design being accomplished. A brother may interfere in behalf of a brother to the extent of taking life only when the homicide is necessarily committed in lawfully keeping or preserving the peace.

10.  A request containing several alternative propositions of law, one of which is incorrect, is correctly refused when requested as an entirety.

Writ of error to the Circuit Court for Bradford county.

The facts in the case are stated in the opinion of the court.

*John E. Hartridge and Wills & Long*, for Plaintiff in Error.

MABRY, J.:

R. R. Richard and O. G. Richard were jointly indicted for the murder of A. J. Kite, and on trial, O. G. was acquitted and R. R. convicted of manslaughter. The case is in this court on writ of error from the sentence of the trial court imposing a term of five years in the penitentiary against R. R. Richard.

The deceased was shot on a street in Lake Butler, Bradford county, in August 1899, between seven and eight o'clock in the evening, and sat down on the steps of a building where he was approached by one J. L.

34

West, who was examined for the State. West testified
that when he reached the deceased he said "get me a
quilt and lay me on the street and let me die.   *   *   I
am shot through and through and can't live. I am go-
ing to die." He was asked who shot him, and said, "I
went to arrest Gordan (O. G. Richard) and I had to
knock him down, and while I stooped over him to pick
him up to carry him to jail, Dolph (Randolph R. Rich-
ard) ran up behind me and shot me." He was then put
on a cot and on the way to his house said he was going
to die. The witness further testified that deceased was
shot three times in the back, indicating that the balls
went through the body. Motion was denied to exclude
the evidence on the ground that it was not properly con-
nected or a proper foundation laid for its introduction
as a dying declaration. Motion was then made to strike
out all of the testimony except the statement made by
the deceased as to who shot him, and this was denied.
Dr. Tomlinson, who attended the deceased before he
died, testified that the cause of his death was three
wounds caused by three pistol shots indicating where
the balls entered and came out of the body. One of the
shots was stated by him to be mortal. Speaking in refer-
ence to a statement reduced to writing made by the de-
ceased soon after he was shot and carried home, the
doctor further testified that at the time of making the
statement the deceased said he was going to die, and all
he wanted was something to ease his pain; he was suf-
fering and wanted something to ease his pain, and at the
time his mind seemed to be clear. On cross-examina-
tion this witness stated that he told deceased that the
wounds were just shot through the skin and would not
amount to anything, and that a Doctor Anthony told
him he was not hurt much, and that he was a Kite and

could stand it all right. The deceased replied "no, I am going to die; this is going to kill me." The motion was then renewed to strike out the testimony of West as to the statements of the deceased on the ground that no proper foundation was laid for a dying declaration, and this motion was denied. A justice of the peace testified that the deceased made a statement to him the night he died and the statement was reduced to writing as near as possible, in the language used, and after being read over to deceased he signed it. The justice further testified that he questioned the deceased before the statement was made as to his condition, if he thought he was going to die or get well, and his reply was that he realized his condition, and realized that he would not get well. Both of the physicians were present at the time. On cross-examination the justice stated that he did not put in the written statement the questions, but only the answers to questions as they could be understood; that he did not remember how many questions were asked and that he put down only the answers to the questions. He also testified that at some time while he was present with the deceased he said he knocked O. G. Richard down, but witness did not remember whether this statement was made at the time of the reduction to writing or just before or after. The shooting occurred between seven and eight o'clock in the evening, and death ensued early the next morning. The State introduced the written statement which is as follows:

State of Florida,

   Bradford County.

   Before me, a justice of the peace in and for said State and county, personally appeared A. J. Kite who, being duly sworn, says that on the 19th day of August A. D. 1899, in the county and State aforesaid, one O. G. Richard was drunk and disorderly in the town of Lake

Butler, and he, the said deponent, attempted to arrest him, the said O. G. Richard, when someone shot him in the back from behind. The said deponent then ran across the street and said R. R. Richard following him shooting him. I then pulled my pistol and R. R. Richard and I stood and shot at each other. I fired three shots. O. G. Richard came up and R. R. Richard told him to shoot me. Gordon jumped behind the well. I don't know whether he shot me or not. I am satisfied that I will not get well. (Signed) A. J. Kite. This statement was sworn to before the justice of the peace. Objection was made and overruled to the introduction of the written statement on the grounds that it relates to matters distinct from issues being tried and not part of the *res gesta*; because it was shown that the witness did not claim to be literal in taking down the statement; because it was in part as shown by the testimony, in response to questions asked; because the affidavit shows upon its face that it was not the dictation or statement of the deceased, but a succession of questions by the scribe and answers of deceased; and because no proper foundation was laid for its introduction. The foregoing rulings in reference to the dying statements of the deceased from the basis of the first, second and third assignments of error. Dying declarations of a person mortally wounded in reference to the circumstances which caused death, in cases where the death of the declarant is the subject of the charge, are admissible in evidence when the declarant evidently believes that death is imminent and he is without any hope of recovery. When the party is in extremity, all hope of this world is gone, every motive to falsehood silenced, and the mind induced by the most powerful considerations to speak the truth, the situation is so solemn and so awful as to be

considered by the law as creating an obligation equal to that of an oath administered in court. The circumstances under which such statements are made must be shown in order that the court may determine whether the declarations should be considered by the jury. Dixon v. State, 13 Fla. 636; Lester v. State, 37 Fla. 382, 20 South. Rep. 232; Greenleaf Ev. (16th Ed.) § 156. We are of opinion that a sufficient showing was made that the deceased thought his death was imminent and had lost all hope of recovery when he made the oral statement to West and the declarations to the justice and reduced to writing to admit them as dying declarations. He asked West to lay him on the street and let him die, stating at the time that he was shot through and through and could not live. The statement made to the justice was a short time after what was said to West, and the proof shows that he then understood his condition and realized that he would die. All that he said in reference to his recovery strongly impresses the mind with the belief that he thought himself in the presence of immediate death and without any hope of living. The fact that the attending physicians tried to encourage him by telling him his wounds were not serious, taken in connection with his reply, does not show that he had any hope of recovery. He was so firm of the belief that he was going to die that he instantly told the doctor, who tried to encourage him, that he would die. The motion to strike out all the testimony of West as to the statement of the deceased except as to who shot him was properly denied for the reason that what he said in reference to his condition and his hopes of recovery tended to show the circumstances and state of mind under which the declaration was made as to whether it was in fact a dying declaration in the meaning of the law. Was

the deceased at that time without hope of recovery and believed that he was at the point of death? What he said tended to exhibit his true feeling and belief, and it was proper for the court to know what he said in determining the admissibility of the statement as a dying declaration. The motion to strike out went to all of the statements except that part in reference to who shot the deceased, and as some part covered by the motion was admissible, we are not required to examine critically every sentence in the statement. The same observations will apply to the objection to the written statement on the ground that it related to matters not a part of the *res gesta*. Some part of the statement is clearly admissible, and the proper course would have been to exclude the part not admissible, if such be the case. The fact that declarations are made in response to questions is no ground for excluding them. I Greenleaf Ev. (16th Ed.) § 159. The justice testified that the statement contained the language of the declarant as near as possible, and that after it was written out it was read over to and signed by him. This sufficiently overcomes all the other objections to the introduction of the written statement not already considered, and the court committed no error in the rulings mentioned.

The court instructed the jury that "in prosecutions for criminal offences where two or more persons are charged in the same indictment, the prosecution is several as to each defendant, and if you have a reasonable doubt of the guilt of either of the defendants you must give the benefit of such reasonable doubt to any defendant as to whom you have it. *You may convict one and acquit the other as the evidence warrants, or acquit both as you find from the evidence.*" The italicised part of the charge is assigned as error, and the point sought to be

made on it is that it excludes the right of the jury to entertain a reasonable doubt arising from a want of evidence. Without considering whether this criticism has any force, aside from any other portion of the charge, we are satisfied that, read in connection with another portion given in the immediate connection, the jury could not have been misled, and plaintiff in error has no ground of just complaint. The portion of the charge referred to is that "each defendant in a criminal case is presumed innocent until the State has, by competent testimony, proved his guilt to the exclusion of or beyond a reasonable doubt," &c. The court, in effect, informs the jury that the defendant is presumed innocent in the absence of any testimony, and that he is entitled to an acquittal unless the testimony establishes guilt beyond a reasonable doubt. We do not perceive how the jury could have failed to give the defendant the benefit of any doubt arising from a want of evidence, if such was the case, to establish guilt beyond a reasonable doubt.

The court charged the jury in reference to its being murder under the law to kill an officer in the execution of his official duties, and this portion of the charge is assigned as error. The plaintiff in error was convicted of manslaughter, and not murder, and as the jury rejected entirely the theory of murder hypothecated in the charge objected to, it is not apparent that he was injured in any way by the charge. In this view it is not material to consider whether the charge was legally accurate as applied to a finding of murder. The plaintiff in error is not complaining of this degree of homicide.

Assignments of error are based upon the refusal of the court to give instructions numbered one and two requested for defendant. The first is that "if a person is assaulted in such a way as to induce in him a reasonable

belief that he is in actual danger of losing his life or of suffering great bodily harm, he will be justified in defending himself, although the danger be not real, but merely apparent. Such a person will not be held responsible criminally, if he acts in self-defence from a real and honest conviction as to the character of the danger, although he may be mistaken as to the extent of the actual danger." The second, in effect, applied the same principle to the plaintiff in error personally. The test of reasonable belief of imminent danger entertained by a reasonably prudent or cautious man, applied in the cases of Smith v State 25 Fla. 517, 6 South, Rep. 482, and Padgett v. State, 40 Fla. 451. 24 South. Rep. 145, is absent from the instructions. The court instructed the jury on the subject of justifiable homicide under the statute, that it was jutifiable when committed in resisting any attempt to murder such person or commit a felony upon him, or when committed in the lawful defence of such person or of his or her husband, wife, parent, child, master, mistress or servant, when there shall be reasonable ground to apprehend a design to commit a felony or do some great personal injury and there shall be imminent danger of such design being accomplished. But the court instructed the jury that this right of defence under the statute applied only to the domestic relations stated, and did not justify or excuse the killing of a human being in defence of a brother. We are of opinion, without reference to the language of the charge refused and what the court had already charged, that plaintiff in error has no right to complain of the refusal of the court to instruct the jury on that phase of the law of justifiable homicide alluded to in the rejected requests under the facts of this case as applicable to him. The theory of the prosecution was that Kite, the deceased, while acting in the capacity of marshal, attempted to

arrest O. G. Richard, knocking him down in the attempt, and that R. R. Richard approached him from behind and shot him in the back. Plaintiff in error did not concede that he shot Kite while he was attempting to arrest O. G. Richard, or at all, but insists that if he did, Kite had no right to make the arrest and plaintiff in error had the legal right to resist in the defence of his brother. It is also contended that plaintiff in error had reason to apprehend that a felony was being committed on O. G. Richard, and this justified an interference, even to the extent of taking life. The testimony shows clearly that some one shot at Kite from behind after he had knocked O. G. Richard down and while over him, but it fails to show any assault on, or menace to, or altercation with R. R. Richard, on the part of Kite before he was shot. We do not find in the evidence any support to the theory that plaintiff in error could have commenced an assault on Kite on the theory that he had reasonable ground to apprehend the taking of his own life or the infliction on him of great bodily injury as hypothesised in the rejected requests. On the state of the proofs it was not indispensable that the court should submit the case to the jury on the theory requested. The instructions to the jury should cover the law as applicable to the facts, and it is elementary that it is not error to refuse a correct proposition of law where the facts do not demand it. The right to resist arrest or take life in defence of a brother will come up under other instructions refused.

The seventh request of defendant was refused by the court, and the ruling is assigned as error. We are of opinion that the entire scope of this request was fully covered by the general charge of the court and the third and sixth charges given at the request of defendant,

and hence there was no error in declining to give the seventh request.

The eighth and eighteenth requests were refused, and we think properly so because they are fully coverd by the general instruction of the court and charges given at request of defendant.

'The tenth request refused contains statements that are not correct, and are sufficient to authorize its refusal. It hypothesises a state of facts upon which the jury were directed to find a verdict of manslaughter, and such was the finding in the case. Besides this the court fully covered the ground of the request in an instruction given, and the defendant has no room for complaint in this respect.

The sixteenth and seventeenth requests refused by the court were on the subject of reasonable doubt, and we think the court had already sufficiently instructed the jury on the subject as to justify their refusal. Where the court correctly instructs as to the presumption of innocence, and that the testimony in its entirety must establish guilt of the charge beyond any reasonable doubt, it is not error for the court to refuse again to charge in substance the same as already given, though the request may be couched in different language. Long v. State, 42 Fla. —, 28 South. Rep. 775; Higginbotham v. State, Ibid., decided at this term.

The eleventh, twelfth, thirteenth and fourteenth requests of defendant refused by the court are as follows: 11. "Officers of the law, except when in the discharge of their duty as such, are entitled to no more protection under the law than an ordinary citizen, and have no more rights than other citizens. It is the right of an officer to arrest persons for the commission of crime amounting to no more than a misdemeanor or breaches

of the peace committed in his presence, but in making an arrest he must not exceed his duty. If you believe A. J. Kite to be marshal, and he merely laid his hand upon Gordon Richard to arrest him, and that such was by reason of an infraction of the law committed in his presence by Gordon, then thus far he would be justified as a police officer; but if, instead of doing this, Kite commenced by giving Gordon a blow and knocking him down, he was not justified in so doing and exceeded his duty, and the right to defend himself was then and there bestowed upon Gordon."

12. "Officers of the law are authorized to discharge their duties in a proper and lawful manner, notwithstanding any resistance that may be made to them, yet they shall not take extreme measures upon slight causes or unless there is real necessity. Therefore, if you find from the evidence that Gordon Richard was unarmed and had been guilty of an infraction of the law in the presence of Kite, and Kite was marshal, and that Kite endeavored to make an arrest by first knocking him down, then said knocking down was without warrant of law, and Gordon Richard had the right to resist. And if you further believe from the evidence in this connection that he had not been guilty of any infraction of the law, and that without being in the discharge of his duty Kite assaulted him, it was the right of Gordon Richard to fight back and repel force with force in such a degree as was necessary to protect himself."

13. "If you believe from the evidence in this case that Kite did endeavor to arrest Gordon Richard, but through some motive and for some purpose outside and independent of the discharge of his duty he assaulted Gordon Richard, then Richard was perfectly justifiable in resisting this assault; and if, under these circum-

stances, Dolph Richard interfered and through this interference, in the course of a fight, shot and killed Kite, then such killing would not be murder."

14. "The right to self-defence, as laid down in the foregoing instructions is extended under the law to the defence of the brother, and if the jury believe from the evidence that the deceased Kite had knocked Gordon Richard down and was standing over him in an attitude indicating or threatening serious bodily harm to the said Gordon Richard while he was prone upon the ground; and if you believe from the evidence that the said deceased Kite was shot while he was in this attitude, by the defendant R. R. Richard, and that the said Gordon Richard was the brother of the said R. R. Richard, and that the said R. R. Richard had reason to believe, from the surrounding circumstances that Kite intended to do some great bodily harm to his brother Gordon, and acting on that belief fired the fatal shot, he will be justified in the law and you should find the defendants not guilty."

As Gordon Richard was acquitted it will not be necessary for us to determine the correctness of requests applying exclusively to him, unless the principal announced in fourteen, that one brother can exercise the full right of self-defence in behalf of another, is correct. Our statute provides (section 2377) that the killing of a human being is either justifiable or excusable homicide, or murder or manslaughter, according to the facts and circumstances of each case. Justifiable homicide is defined to be "when committed by public officers and those acting by their command in their aid and assistance, either in obedience to any judgment of a competent court, or when necessarily committed in overcoming actual resistance to the execution of some legal

Richard v. State.—Opinion of Court.

process, or the discharge of any other legal duty, or when necessarily committed in retaking felons who have been rescued, or who have escaped, or when necessarily committed in arresting felons fleeing from justice." Homicide is also justifiable when committed by any person in either of the following cases: "(1) when resisting any attempt to murder such person or to commit any felony upon him or her, or upon or in any dwelling-house in which such person shall be; or (2) when committed in the lawful defence of such person or of his or her husband, wife, parent, child, master, mistress or servant, when there shall be a reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished; or (3) when necessarily committed in attempting by lawful ways and means to apprehend any person for any felony committed, or in lawfully suppressing any riot or in lawfully keeping and preserving the peace." Homicide is excusable "when committed by accident and misfortune in lawfully correcting a child or servant, or in doing any other lawful act by lawful means with usual ordinary caution, and without any unlawful intent, or by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat, without any dangerous weapon being used, and not done in a cruel or unusual manner." The statute also defines murder in its three statutory degrees and makes manslaughter "the killing of a human being by the act, procurement or culpable negligence of another, in cases where such killing shall not be justifiable or excusable homicide nor murder, according to the provisions of this article."

Section 2388 provides that whoever shall unneces-

sarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any other unlawful act, or after such attempt shall have failed, shall be deemed guilty of manslaughter.

By our statute any person is justifiable in committing homicide not only in the lawful defence of himself, but also of his or her husband, wife, parent, child, master, mistress or servant, when there shall be a reasonable ground to apprehend a design to commit a felony or do some great personal injury, and there shall be imminent danger of such design being accomplished. A brother is not included among these domestic relations in whose behalf any person may defend, not only when absolutely necessary to protect life, but also when there shall be a reasonable ground to apprehend a design to commit a felony or do some great personal injury, and there shall be imminent danger of such design being accomplished. If a brother kills solely in defence of a brother, in order to escape some one of the homicidal offences defined by the statute the facts of the case must bring him within one of the justifiable or excusable homicides therein authorized, as the statute law is that the killing of a human being is either justifiable or excusable homicide, or murder or manslaughter, according to the facts and circumstances of each case. In the present case the only defensive ground upon which plaintiff in error can claim to stand, conceding that he shot the deceased after he had knocked Gordon Richard down, is that embraced under the third head of the second division of section 2378 Revised Statutes, to the effect that a homicide is justifiable when necessarily committed by any person in lawfully keeping and preserving the peace. It is laid down generally by common law authority that the necessary killing of a human being to prevent the commission of a known forcible

felony is authorized by law. Blackstone says that homicide when committed for the prevention of any forcible and atrocious crime is justifiable by the law of nature and also by the law of England as it stood so early as the time of Bracton. Anciently many felonies at common law were punishable with death and this may have authorized the further statement of Blackstone that "the one universal principle that runs through our own and all other laws seems to be this—that where a crime, in itself capital, is endeavored to be committed by force, it is lawful to repel that force by the death of the party attempting." 2 Lewis' Blackstone, 182. But our statute, as we have seen, has regulated the subject of homicide, and its terms must be considered in ascertaining the character of a killing. People v. Cole, 4 Parker's Cr. Rep. 35. According to its express provisions the homicide, in order to be justifiable, must necessarily be committed in lawfully keeping or preserving the peace. The statute puts the killing under the third subdivision which we are considering, upon the ground of actual necessity, and does not justify one in acting upon reasonable belief arising from appearances. We do not deem it necessary in this case to go into a full discussion of the cases in which a private person may justifiably kill another in lawfully keeping or preserving the peace, but confine the decision to the correctness of the requests refused.

The view asserted in the fourteenth request, that the right of self-defence laid down in the preceding ones was extended under the law to the defence of a brother, is not correct. A brother is not included among the relations in whose behalf the right of permissive defence is authorized by the statute and the court was justified in refusing the request on that account. Even if a brother were included among the relations in whose

behalf the right of self-defence is permitted, it could only be exercised in cases where there is reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there is imminent danger of such design being accomplished. The fourteenth request is essentially defective in this respect.

The nineteenth request was properly refused for reason just stated.

The thirteenth request does not contain the idea that Dolph Richard had the right to interfere on the ground of being a brother, but it is so clearly wrong as to call for no extended discussion. There is no reference to the danger of the person assaulted, nor the necessity under which the killing was done. This request is entirely inconsistent with the views we have already stated.

The only other refused request applicable to plaintiff in error and objected to is numbered ten and one-half, as follows: "Under the law where a person is being violently and unlawfully assaulted, a stranger is authorized to interfere with such force as may be necessary to stop the assault, and if in doing so he uses no more force than is necessary he is within the law; or, if in so doing he is in turn assaulted violently by one of the parties to the affray, and is placed in danger of great bodily harm, then he would be justified in taking the life of his assailant; or if an interference was had under such circumstances by a stranger, he should through hot blood use more force than necessary and kill one of the parties to the affray, provided he interfered with proper motives and for the purpose of preventing a breach of the peace, such killing would be manslaughter and not murder." This request contains separate distinct propositions of law, and if either one is not correctly stated, the refusal of the court to give it as an

entirety is defensible. The second proposition in effect, is this, that if one person is violently and unlawfully assaulted and a stranger interfere, using no more force than is necessary to stop the assault, and one of the parties to the affray turn on him and assault him violently, and he is placed in danger of great bodily harm, then he is justified under the law in taking the life of the assailant. Would not the danger of great bodily harm to the party interfering have to be imminent in order to justify the taking of life? It may be commendable and in the discharge of a legal duty for a person to interfere and stop an unlawful violent assault, but when this has been done and one of the parties to the affray, whether the one guilty of the unlawful assault or not, turns on the peacemaker, can he justifiably take the assailant's life under other conditions than those prescribed by law to justify a homicide in self-defence? We think not. A man is justified in committing a homicide only when resisting an attempt to murder him, or to commit a felony upon him, or upon or in any dwelling-house in which he may be; or when committed in his lawful defence when there shall be a reasonable ground to apprehend a design to commit a felony or do some great personal injury, and there shall be imminent danger of such design being accomplished. The last qualifying clause is important and limits the right to take life, where the other conditions exist, when the danger is imminent. We think the court did not err in refusing the charge.

On the point of the testimony we are of opinion that the jury were authorized to conclude that plaintiff in error shot the deceased, and that in other respects the evidence is sufficient to sustain the verdict.

The judgment of the court below is affirmed.