CARL SOLES, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

En Banc.

Opinion filed January 29, 1929.

*Akerman & Akerman,* for Plaintiff in Error;

*Fred H. Davis,* Attorney General, and *Roy Campbell,* Assistant for the State.

BROWN, J.—Carl Soles was convicted of manslaughter on an indictment charging him with the murder of Clifford Long in May, 1928. The weapon which was alleged to have been used was a 22 calibre rifle.

The judgment is attacked because it is said that the court erred in admitting in evidence the dying declaration of Clifford Long; that it erred in refusing an instruction requested by the defendant upon the subject of dying declaration which embodied the proposition that if the jury should find from the evidence that the statement admitted as a dying declaration was made ''without consciousness on the part of the deceased of impending death'' then the jury

should not consider it as a dying declaration. And that the evidence was not sufficient to support the verdict.

Arthur Robinson, a witness for the State, was driving the automobile in which the boy, Clifford Long, was sitting when the latter was shot. They had been trying to obtain some whiskey for Robinson. While searching for it, or pretending to do so, they were frightened away by what they supposed to be a rifle shot. The two with one Jesse Jackson, who was also a member of the party, returned to the automobile and drove away. As they proceeded along the road another shot was fired from a point down the road to their rear and Clifford Long was wounded in the back of the head. He died as the result of that wound.

About an hour before he died, according to the testimony of his father who asked who had hurt him, he replied: "Oh! Daddy, Carl Soles shot me with a 22 rifle. I have got to die." The statement was made about twenty or twenty-five minutes after he was shot. The defendant objected to the question propounded to the father of the boy which elicited the above statement from him. The objection was overruled and exception was noted. No motion was made to exclude the answer.

The sister of deceased, a girl about fourteen years old, testified to the same fact and added that about fifteen minutes after the deceased was brought to the place where the statement was made the defendant came on the scene driving a truck. No one was with him and he had a "22 rifle." She was permitted to repeat the "conversation," as it was called, which occurred between the boy who had been shot and his father over defendant's objection. The conversation consisted of a question by the father addressed to no one in particular as follows: " 'Who has hurt my darling boy?' ", and Clifford replied, according to the father, " 'Oh, Daddy, Carl Soles shot me with a 22 rifle. I

have got to die.' '' According to the girl, the boy replied as follows: '' 'Papa, Carl Soles shot me with a 22 rifle and I have got to die.' ''

The admission of this evidence constituted the basis of the first and second assignments of error.

It is argued that the statement was inadmissible not only because the court did not inquire of others present whether the deceased said he had to die, and that one other witness who was present said he did not hear such statement, but that the statement contained no evidence that the declarant made it in the belief that death was impending.

The boy had gone with two negroes in an automobile a short distance from where he lived and was returning when he was shot. After riding a short distance he left the automobile, transferred to a truck which was about to pass and was driven to Sammy Long's store where his father assisted him in getting out of the truck. He soon became unconscious but before passing into unconsciousness he made the statement.

The defendant's counsel requested the court to give the following instruction to the jury:

> The Court has admitted in evidence for your consideration an alleged dying declaration of the deceased. In so admitting said dying declaration the Court has only passed upon its admissibility. In order that a statement of the deceased may properly be considered as a dying declaration it must have been made by the deceased with a consciousness of impending death, and if you find from the evidence that such statement by the deceased, if made, was without consciousness on the part of the deceased of impending death you should not further consider it as a dying declaration.

There was no error in admitting the testimony of the two witnesses above referred to. Lester v. State, 37 Fla., 382, 20 So. 232; Copeland v. State 58 Fla., 26, 50 So. 621; Sealey v. State, 89 Fla., 439, 105 So. 137; Richard v. State, 42 Fla., 528, 29 So. 413; Clemons v. State, 43 Fla., 200, 30 So. 699.

We are inclined to the opinion that the court below was correct in refusing to give the quoted instruction requested by the defendant, and that the judgment of conviction should be affirmed. While there is some conflict of authority on the question, it appears to us from a careful review of the cases in the notes under Section 1451 of Wigmore on Evidence, 2nd Ed., that the weight of authority and the trend of our own former decision is to the effect that such an instruction should not be given. In the text of said Section 1451, Dean Wigmore in discussing the question in part says:

Section 1451. That the judge is to pass on the preliminary condition necessary to the admissibility of evidence is unquestioned (post Sec. 2550.) It follows, as of course, that, since a consciousness of impending death is according to the foregoing principles legally essential to admissibility, the *judge must determine* whether that condition exists before the declaration is admitted.

After a dying declaration, or any other evidence has been admitted, the weight to be given to it is a matter exclusively for the jury. They may believe it or may not believe it; but, so far as they do or do not, their judgment is not controlled by rules of law. Therefore, though they themselves do not suppose the declarant to have been conscious of death, they may still believe the statement; conversely, though they do suppose him

to have been thus conscious, they may still not believe the statement to be true. In other words, their canons of ultimate belief are not necessarily the same as the preliminary legal conditions of admissibility, whose purpose is an entirely different one (*ante*, Sec. 29). It is, therefore, erroneous for the judge, after once admitting the declaration, to instruct the jury that they must reject the declaration, or exclude it from consideration, if the legal requirement as to consciousness of death does not in their opinion exist. No doubt they *may* reject it, on this ground or on any other; but they are not to be expected to follow a definition of law intended for the Judge.

To much the same effect is the treatment of the point by Greenleaf, in Vol. 1, 16th Ed., Section 161-b. After laying down the general rule as to the court's determination of the admissibility of the declaration, he adds:

But, after the evidence is admitted, its credibility is entirely within the province of the jury, who of course are at liberty to weigh all the circumstances under which the declarations were made, including those already proved to the judge, and to give the testimony only such credit as upon the whole they may think it deserves.

In the note to Section 1451 of Wigmore on Evidence, it is said that a contrary ruling was made in R. v. Woodcock, Leach Cr. L., 3rd Ed. 563, an English case decided in 1790, but that this was subsequently repuditated in England, and that the principle as stated above does not appear to have since been doubted. He quotes Starkie (1 Stark. 521) as having observed:

It might as well be left to a jury to say whether a witness ought to be sworn, or whether he is not incapacitated by ignorance or infamy or other cause from giving evidence upon oath.

In Holland v. State, 39 Fla. 178, 22 So. R. 298, this court held that "the court determines the admissibility, and the jury the credibility, of confessions. It is not error, therefore, for the court to refuse to charge the jury that if they be believe from all the evidence that defendant's confession was procured from fear or terror, or hope of reward, they should disregard the confession in making up their verdict." See also Bates v. State, 78 Fla. 672, 84 So. R. 373; Roberts v. State, 72 Fla. 132, 72 So. R. 649. This appears to be the orthodox rule, in regard to confessions. Sec. 861, Wigmore on Evidence, 2nd Ed. The analogy to dying declarations is, in this respect, quite complete. In Roten v. State, 31 Fla. 514, 12 So. R. 910, it was held that the question of the admissibility of a dying declaration was exclusively one for the court to decide.

Affirmed.

TERRELL, C. J. AND WHITFIELD, STRUM AND BUFORD, JJ., concur.

ELLIS, J., dissents.

ELLIS, J., (dissenting):

I am unable to agree to the conclusion reached by my fellow members of the Court because I do not construe the phrase "you should not further consider it as a dying declaration" to be an imperative instruction to set aside the court's judgment as to the admissibility of the evidence as

a dying declaration if the jury should believe that the statement was made by the deceased without consciousness on his part of impending death, but rather that in such case the jury in the exercise of their duty to judge of the credibility of the evidence need not consider it as having been made under the sanctity of a situation deemed to be equivalent to an oath.

The phrase "dying declaration" as used in the requested instruction did not carry the technical significance which it has in the law of evidence, but to the jury it meant that while the court had admitted the evidence its credibility was for the jury to determine in the light of their opinion as to whether the statement had in fact been made as a "dying" statement, or the statement of a person dying who was conscious of the fact.

No proposition similar to that contained in the requested instruction was embraced in the general charge nor was any reference made by the court to the dying declaration admitted in evidence. While the question of the admissibility of dying declarations is one of mixed law and fact and solely within the province of the court, see Green v. State, 43 Fla. 552, 30 South. Rep. 798; Dixon v. State, 13 Fla. 636; Richard v. State, supra, and the responsibility of determining the question preliminarily cannot be shifted upon the jury, Roten and Thompson v. State, 31 Fla. 514, 12 So. R. 910, yet it is undoubtedly true that the jury in considering the question of the defendant's guilt may, where dying declarations have been admitted and constitute part of the case against the accused, consider the circumstances under which the alleged declarations were made with the view of satisfying themselves whether in fact the person making the dying statement was in the article of death, or was not conscious of his condition at the time, or

the statement as claimed to be made was the true statement made.

The jury are the judges of the weight of the evidence; the credibility of the witnesses. The jury are not bound to accept the statement shown to have been made as true in point of fact because the court has held it to be admissible. One of the important considerations which affect the value of the declaration as trustworthy evidence is whether the declarant realized his condition to be a serious one and that death was impending. It is a matter which goes to its credibility at that stage of the proceeding and not to its admissibility.

The reason for the rule admitting dying declarations is that the serious or grave situation of the declarant assures the same degree of credibility to his statements as if they were made under oath at the trial and the accused had the opportunity to cross-examine him.

It is very easy to understand that a jury might not be able to draw the distinction between the admissibility and credibility of the evidence, mistaking the order of the court upon its admissibility as tantamount to an opinion that it should be believed. The subject has been very fully discussed by many courts and text writers and the conclusion almost invariably reached that the court should instruct the jury under what circumstances it may consider or refuse to consider the testimony so admitted. See Commonwealth v. Brewer, 164 Mass., 577, 42 N. E. R. 92; State v. Phillips, 118 Iowa 660, 92 N. W. R. 876; State v. Reed, 53 Kan., 767, 37 Pac. R. 174, 42 Am. St. R. 322; State v. Banister, 35 S. C. 290, 14 S. E. R. 678; North v. People, 139 Ill. 81, 28 N. E. R. 966; Commonwealth v. Murray, 2 Ashm. (Pa.) 41.

I think the instruction should have been given and that its refusal was a substantial error because if the jury had discovered any reason for discrediting the dying declaration

it was have left the case for the State practically without support except for the testimony of the fourteen-year-old sister who said that she overheard Soles say to Ruby Long that he shot Clifford Long, which standing alone and unexplained might have been deemed insufficient to produce an abiding conviction to a moral certainty in the minds of the jury as to the guilt of the accused.

I think the judgment should be reversed.