947 So.2d 517 (2006)
Michael Lashawn WILLIAMS, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D04-2850.
District Court of Appeal of Florida, Third District.
December 20, 2006.
Rehearing Denied January 30, 2007.
*518 Bennett H. Brummer, Public Defender, and Howard K. Blumberg, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Jennifer Falcone Moore and Linda S. Katz, Assistant Attorneys General, for appellee.
Before FLETCHER, SHEPHERD, and SUAREZ, JJ.
SUAREZ, J.
The defendant asserts that he should receive a new trial because the State referred *519 to evidence in its opening statement that it never introduced at trial, and because admission of the victim's dying declaration violated his right to confront the witness testifying against him. We affirm the conviction and sentence.
The defendant was charged with the shotgun murder of his sister's ex-boy-friend. The victim and the defendant's sister, Nicole, had dated and lived together for several years. They fought and Nicole moved out. The victim came to the school where Nicole worked, the two had an argument, and the victim took Nicole's purse. Nicole was upset because the purse contained keys, and a friend drove Nicole from work to her brother's house to pick up an extra set of car keys. That evening, a man who witnesses identified as the defendant, carrying a shotgun, waited for the victim outside the victim's duplex. He left for approximately fifteen minutes, and then returned with Nicole's keychain. He let himself into the victim's duplex, brought the victim outside, and eventually shot the victim in the abdomen with the shotgun. The victim came back into the duplex and locked the door. The defendant kicked down the door, followed the victim into the duplex, and exited carrying a black bag. He left the scene on foot. Neighbors and police arrived on the scene within two minutes of the shooting to find the victim bleeding, screaming, and trying to push his intestines back into his abdomen. He told bystanders and the police that his girlfriend's brother Mike had shot him. He died at the hospital a few hours later.
First, the defendant argues that his motion for mistrial should have been granted because the State's opening statement contained information attributable to Nicole that was not proven at trial. In an opening statement, "[t]he prosecuting attorney may outline the facts which he, in good faith, expects to prove and which are competent for him to prove." Paul v. State, 209 So.2d 464, 464 (Fla. 3d DCA 1968).
Here, the prosecutor laid out the facts that the State expected to present at trial. This included testimony that it stated would come from Nicole. Prior to trial the State had met with and interviewed Nicole. She gave the State her cellular phone number and promised to appear at trial. She then failed to appear. There has been no suggestion that the prosecutor acted in bad faith by outlining Nicole's expected testimony in the State's opening statement. Ricardo v. State, 481 So.2d 1296 (Fla. 3d DCA 1986). Even though Nicole failed to testify, the evidence that the State claimed in opening would be elicited through Nicole was either introduced by the State through other witnesses at trial or was irrelevant or tangential. Therefore, the objected-to portion of the opening statement was harmless beyond a reasonable doubt. Occhicone v. State, 570 So.2d 902 (Fla.1990) (trial court did not abuse its discretion by referring briefly in opening statement to doctor expected to testify who ended up not being called); Williams v. State, 865 So.2d 17 (Fla. 4th DCA 2003) (statement in opening regarding children being removed from home harmless in light of uncontested testimony to this effect); Ricardo v. State, 481 So.2d 1296 (Fla. 3d DCA 1986) (no error where prosecutor referred to facts contained in a report that had the possibility of being introduced into evidence); Travieso v. State, 480 So.2d 100 (Fla. 4th DCA 1985) (state's reference to a potential witness in opening statement as though he was going to testify at trial, who ended up not testifying at trial, was not error).
Next, the defendant argues that the victim's statements to police and to witnesses identifying him as the shooter *520 violated the Confrontation Clause pursuant to Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). As a general matter, statements made in response to a police interrogation are defined as "testimonial," and are inadmissible because they violate the Confrontation Clause. U.S. Const. Amend. VI; see Crawford, 541 U.S. at 51-52, 124 S.Ct. 1354 (specifically including police interrogations as testimonial statements); State v. Hosty, 944 So.2d 255 (Fla. 2006) (holding that mentally impaired victim's statements to police officers were testimonial and therefore inadmissible under Crawford). However, Crawford acknowledges that dying declarations have been the "one deviation" to the rule excluding testimonial statements in criminal cases, and that the exception may remain valid post-Crawford:
The existence of [the dying declaration] exception as a general rule of criminal hearsay law cannot be disputed. . . . Although many dying declarations may not be testimonial, there is authority for admitting even those that clearly are. . . . We need not decide in this case whether the Sixth Amendment incorporates an exception for testimonial dying declarations. If this exception must be accepted on historical grounds, it is sui generis.

Crawford, 541 U.S. at 56 n. 6, 124 S.Ct. 1354 (internal citations omitted).
Several state and federal courts addressing this issue have found that the dying declaration exception to the hearsay rule has survived Crawford. See State v. Martin, 695 N.W.2d 578 (Minn.2005) (admission of a dying declaration into evidence does not violate the defendant's confrontation rights because such an exception existed at common law and was not repudiated by the Sixth Amendment); People v. Monterroso, 34 Cal.4th 743, 22 Cal.Rptr.3d 1, 101 P.3d 956 (2004) (finding that the dying declaration exception does not conflict with Crawford). Cf. United States v. Jordan, No. 04-CR-229-B, 2005 WL 513501 (D.Colo. Mar. 3, 2005) (holding inadmissible the victim's trauma room statements to police identifying the defendant as the person who stabbed him under the dying declaration exception, excited utterance exception, and forfeiture by wrongdoing doctrine).
The Supreme Court also expressly accepted the doctrine of forfeiture by wrongdoing, which "extinguishes confrontation claims on essentially equitable grounds. . . ." Crawford, 541 U.S. at 62, 124 S.Ct. 1354; see 28 U.S.C. 804(b)(6) (Federal Rules of Evidence forfeiture by wrongdoing provision making admissible "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness"); see also United States v. Mayhew, 380 F.Supp.2d 961 (S.D.Ohio 2005) (rejecting argument that dying declarations are an exception to the Confrontation Clause, but admitting victim's audiotaped statement under the forfeiture by wrongdoing doctrine). The Florida Evidence Code does not contain language that directly mirrors the Federal Evidence Code's forfeiture by wrongdoing provision. However, Florida law does acknowledge that a party's wrongdoing may constitute waiver under certain circumstances. See Ellison v. State, 349 So.2d 731, 732 (Fla. 3d DCA 1977) (in the context of invited error, acknowledging that "[c]onstitutional rights may be waived just as other rights may be waived; a criminal defendant may, by his conduct, make otherwise constitutionally inadmissible evidence admissible for certain purposes"); see People v. Melchor, 362 Ill.App.3d 335, 299 Ill.Dec. 8, 841 N.E.2d 420 (2005) (although no Illinois case had adopted Federal Rule of Evidence 804(b)(6), holding that the doctrine *521 of forfeiture by wrongdoing should be part of Illinois law based on public policy considerations), app. allowed, 218 Ill.2d 551, 303 Ill.Dec. 6, 850 N.E.2d 811 (Ill.2006).
In the instant case, the victim identified the defendant as the man who shot him in response to police questioning minutes after he was shot, as he lay bleeding and was attempting to push his intestines back into his body. The responding officer questioned the victim immediately, rather than following procedure and waiting for an investigator to arrive, because the victim was very gravely injured and appeared to be dying. Although we find the federal and state opinions retaining the dying declaration exception to be persuasive, we need not decide here whether the victim's statements were "testimonial" under Crawford, or whether the dying declaration exception passes constitutional muster. The outcome of the instant case is not dependent upon whether the victim's statements were "testimonial" or admissible as a dying declaration. The victim's statements to the police in the instant case are cumulative to his statements made to lay witnesses identifying the defendant as the shooter. These statements are non-testimonial and admissible under Crawford as dying declarations. See Crawford, 541 U.S. at 68, 124 S.Ct. 1354 ("Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law-as does Roberts, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether"); Soles v. State, 97 Fla. 61, 119 So. 791 (1929) (holding admissible as a dying declaration a boy's statement to his father identifying the shooter twenty to twenty-five minutes after he was shot in the head). Therefore, even if the victim's statements to the police are inadmissible under Crawford, the evidence is cumulative and any error is harmless beyond a reasonable doubt. Lee v. State, 869 So.2d 1251 (Fla. 3d DCA 2004) (admission of hearsay was harmless beyond a reasonable doubt where it was cumulative of other evidence).
Affirmed.