569 So.2d 897 (1990)
STATE of Florida, Petitioner,
v.
Peter Vincent WEIR, Respondent.
No. 90-2680.
District Court of Appeal of Florida, Fourth District.
November 14, 1990.
*898 Michael J. Satz, State Atty., and Lewis Michael, Asst. State Atty., Fort Lauderdale, for petitioner.
Alan H. Schreiber, Public Defender, and Diane M. Cuddihy, Asst. Public Defender, Fort Lauderdale, for respondent.
POLEN, Judge.
The State of Florida brings this petition for writ of certiorari seeking review of a trial court order granting a defendant's motion in limine, barring a dying declaration offered in a pending second degree murder prosecution. In an order released earlier, this court granted certiorari and quashed the trial court order which held that the dying declaration exception to hearsay in Florida is unconstitutional. This opinion provides the rationale for that order.
On the point of jurisdiction, certiorari review has been allowed in this case on extremely narrow grounds and exceptional circumstances, and is limited to the facts of this case. The order on review arose from a motion in limine filed on or about September 24, 1990, and argued on September 26, 1990, five days before trial commenced. The defendant sought a pretrial ruling on the motion in limine, which included a challenge to the admission of electronically recorded statements by the victim of a stabbing made at the emergency room of the hospital, where the victim later died. The statements were objected to as hearsay and unreliable because the victim was said to have been intoxicated when he made them. The trial judge deferred ruling on the motion until the week trial was to commence, citing the need to hear testimony from a doctor not then available. The order granting the motion was entered on the second day of trial.
It is settled that certiorari review may be taken from pretrial orders in criminal cases where a petitioner claims a departure from the essential requirements of law and the unavailability of a remedy by way of appeal. Otherwise, in the case of an order challenged by the prosecution, the state would be deprived of the right of appellate review of non-final orders which could, in some cases, effectively negate its ability to prosecute. If forced to proceed, and if the defendant were ultimately acquitted, double jeopardy would bar the state from further recourse. The harm from the earlier order thus would be irreparable. Recognizing this, the Supreme Court of Florida acknowledged the availability of certiorari review of non-final pretrial orders in criminal cases in State v. Pettis, 520 So.2d 250 (Fla. 1988), and Wilson v. State, 520 So.2d 566 (Fla. 1988). However, those cases did not address the issue of whether certiorari could in any circumstances extend to rulings on motions filed and argued prior to trial, but not actually ruled on until trial had commenced.
In somewhat analogous circumstances, the first district acknowledged its jurisdiction to review an order granting a motion to suppress filed prior to trial but not ruled on until after trial had commenced. In State v. Stevens, 563 So.2d 188 (Fla. 1st DCA 1990), the court took jurisdiction of the appeal of an order granting a pretrial motion to suppress under Florida Rule of Appellate Procedure 9.140(c)(1)(B), where it was not entered until after trial had commenced, and a mistrial was granted after the suppression ruling. The court said that in light of the subsequent mistrial, the order on suppression was, in effect, pretrial for purposes of review under rule 9.140(c)(1)(B).
Although we don't have the same circumstances here of our case reverting to a pretrial posture, we are faced with equally compelling circumstances warranting the exercise of certiorari review. The order on review in this case barred admission of *899 testimony offered under the dying declaration exception to hearsay. More specifically, the trial court found section 90.804(2)(b), Florida Statutes (1989) to be unconstitutional and in violation of the First, Fifth, Sixth and Fourteenth Amendments of the United States Constitution as well as Article I, Sections 3, 9 and 16 of the Florida Constitution. The state as petitioner argues that as there were no other witnesses to the stabbing involved, this ruling eviscerates its entire case, preventing it from refuting the defendant's theory of self defense. Applying Pettis and Wilson, certiorari would lie to review the order granting the defense motion in limine, since the state convincingly argues irreparable harm by virtue of the interlocutory order. The fact that the trial court unilaterally decided to defer ruling on the motion filed prior to trial until it could hear further evidence, which was not even the basis of its ultimate findings of unconstitutionality, should not divest this court of certiorari review over this order of fundamental, far reaching and potentially irreparable impact, even though a mistrial was not entered. The effect of the order could well have led to entry of a mistrial by the court. Recognizing the lack of and need for guidance on this point of great public importance, however, we certify this question to the Supreme Court of Florida:
WHETHER A DISTRICT COURT OF APPEAL HAS CERTIORARI JURISDICTION TO REVIEW AN ORDER GRANTING A CRIMINAL DEFENDANT'S MOTION IN LIMINE FILED PRIOR TO TRIAL BUT NOT ACTUALLY RULED ON UNTIL TRIAL COMMENCED, AT THE TRIAL JUDGE'S DIRECTION, WHERE SUCH ORDER POSES POTENTIALLY IRREPARABLE HARM TO THE STATE BECAUSE APPEAL OR RETRIAL ARE NOT AVAILABLE IN THE EVENT OF AN ACQUITTAL?
Having answered the question affirmatively in our case, we proceed to the merits. As stated earlier, the trial court order on review declared the dying declaration provision in the Florida Evidence Code to be unconstitutional on several grounds. Reduced to its essence, the order contains what we divide into four findings: (1) that the dying declaration statute contains an unconstitutional presumption that the dying declarant was speaking the truth, (presumably a due process claim); (2) that the statute is based on religious beliefs that a declarant would not want to die with a lie on his lips, a de facto judicial establishment of religion based on the premise of life after death; (3) that the statute denies an accused of the right to confront his accuser; (4) that it illegally shifts the burden of proof onto the accused. Analysis of case law and the authorities cited below establishes that these findings constitute a departure from the essential requirements of law.
According to 5 Wigmore, Evidence, § 1430, (Chadbourn rev. 1974), judicial use of dying declarations stems from a tradition long before the evidence system arose in the 1500s. It became recognized as an exception to the hearsay rule in the first half of the 1700s. Indeed, the ruling of Lord Mansfield in Wright v. Littler, 3 Burr. 1244 (1761) is a leading early case recognizing the propriety of dying declarations.
In Florida, the common law precept was articulated as early as 1870. In Dixon v. State, 13 Fla. 636 (1870), the court, in finding trial court error in allowing unfounded dying declaration evidence, acknowledged that dying declarations were properly admissible based upon the concept that:
they are declarations made in extremity, when the party is at the point of death, and when every hope of this world is gone, when every motive to falsehood is silenced, and the mind is induced by the most powerful considerations to speak the truth. A situation so solemn and so awful is considered by the law as creating an obligation equal to that which is imposed by an oath administered in court. Woodcock's case, I Leach, 502.
Id. at 638-639, citing Chief Baron Eyre, in Rex v. Woodcock, 1 Leach 500, 168 Eng. Rep. 352 (K.B. 1789).
Now codified in the Florida Evidence Code, enacted in 1976, and more specifically, *900 section 90.804(2)(b), Florida Statutes (1989), the dying declaration exception to hearsay, provides in part:
(2) Hearsay exceptions.  The following are not excluded under s. 90.802, provided that the declarant is unavailable as a witness:
(b) Statement under belief of impending death.  In a civil or criminal trial, a statement made by a declarant while reasonably believing that his death was imminent, concerning the physical cause or instrumentalities of what he believed to be his impending death or the circumstances surrounding his impending death.
The trial court first challenged the exception as based on a presumption that the decedent in question was speaking the truth when making the dying declaration, without the need to present evidence on the desire or need to "absolve one's self of the immorality of lying before one dies." (Page 3 of trial court opinion.) The trial court concluded that this forced the accused "to respond to a legal fiction devised by the judiciary as a means of convenience when independent proof of guilt is unavailable!" (Page 4, opinion.)
Admission of dying declarations is justified on the grounds of public necessity, manifest justice and the sense that impending death makes a false statement by the decedent improbable. Section 90.804, Law Revision Council Note  1976. To the extent that the trial court in its order on review here suggests that dying declaration testimony creates an irrebuttable presumption of truth however, we cannot agree. As the Florida court said in Coatney v. State, 61 Fla. 19, 55 So. 285, 286 (1911), "[w]hether a proper predicate has been laid for the introduction of evidence of a dying declaration is to be determined primarily by the court, and, when the evidence is admitted, its weight and credibility are for the jury to determine." See also Bland v. State, 210 Ga. 100, 78 S.E.2d 51 (1953) (where there is room for doubt as to whether declaration is based on knowledge, question is for jury).
Indeed, the United States Supreme Court, Florida courts and the great majority of other jurisdictions have allowed impeachment and discrediting of dying declaration evidence by admission of other statements contradictory to it, inconsistent or in conflict with it. See Carver v. United States, 164 U.S. 694, 17 S.Ct. 228, 41 L.Ed. 602 (1897); Morrison v. State, 42 Fla. 149, 28 So. 97 (1900); 16 A.L.R. 411, Impeaching or Discrediting Dying Declarations (1922). Impeachment is allowed based on bad testimonial character, by conduct showing a revengeful or irreverent state of mind, by conviction of a crime, or prior or subsequent inconsistent statements. 5 Wigmore, Evidence, § 1445-46, (Chadbourn rev. 1974). The reasoning articulated for allowing impeachment is that inasmuch as dying declarations are allowed based largely on public policy grounds to prevent crime from going unpunished, the accused should not be prevented from impeaching them by any lawful means, where cross-examination of the declarant is obviously impossible. The courts uniformly agree in allowing impeachment of dying declarations where the impeachment is directed to a living witness. 16 A.L.R. at 422-23.
In addition to impeachment, evidence showing the declarant did not accurately observe the facts recounted is allowed, and can be the basis for a court's exclusion of the dying declaration altogether. See e.g. Jones v. State, 52 Ark. 345, 12 S.W. 704 (1889) (where declarant could not see who shot him, declaration that defendant shot him properly excluded). See also McCormick, Evidence, § 285 (3d ed. 1984).
Thus, while it may be true that dying declarations are afforded a measure of credibility due to their very nature, it is also true that they are not taken as absolute, to the exclusion of impeachment or other evidence as to their truthfulness or accuracy.
The trial court noted the absence of evidence on the declarant's attitude toward life or death or the need to tell the truth when dying. The record does not show this point was probed, but we fail to see why it could not have been, and in the *901 absence of evidence on the matter, left to the jury for the ultimate question of credibility. However, the trial court's conclusion that the entire rule forces an accused to respond to a "legal fiction" when independent proof of guilt is unavailable is unfair and inaccurate. Nothing in the dying declaration law in Florida supports the conclusion that it is a substitute for proof of guilt. It is evidence, whose weight is assigned by the trier of fact. Furthermore, it is just as available to the defense as the prosecution. McCormick, Evidence § 284 (3d ed. 1984).
The second claim of unconstitutionality of the dying declaration rule is the trial court's conclusion that it constitutes judicial establishment of religion, and thus violates the First Amendment to the United States Constitution and Article I, Section 3 of the Florida Constitution. This too is a departure from the law. Here, the trial court stated that the concept of one speaking the truth when "at death's door" is "clearly ecclesiastical in nature." The court referred to a presumption behind the rule that the declarant "does not wish to meet a Higher Being after death with a lie upon the lips, does this not require the existence of religious belief on the part of the declarant during mortal life? Indeed, has it been established, to the degree required by law, that there is life after death? If proof of afterlife is unavailable, is not the dying declaration a de facto judicial establishment of religion?" (Page 4, opinion.)
This analysis does not reflect the present state of the law. The basic philosophies of morality and ethics, premised at least in part on prevailing religious values, may have formed the underpinnings of the early use of dying declarations centuries ago. However, religious justification for the exception has long lost judicial recognition. Indeed, as early as 1897, the United States Supreme Court in Carver v. United States, 164 U.S. 694, 17 S.Ct. 228, 41 L.Ed. 602 (1897) held that the disbelief in a "future state of rewards and penalties" does not warrant exclusion of dying declarations. See also State v. Agnesi, 92 N.J.L. 53, 104 A. 299 (1918) (not necessary to prove belief in Supreme Being); State v. Hood, 63 W. Va. 182, 15 L.R.A. (N.S.) 448, 129 Am.St. Rep. 964, 59 S.E. 971 (1907); Donnelly v. State, 26 N.J.L. 507 (1857).
Recognizing that the religious justification for the common-law exception has lost some popular conviction, Wigmore acknowledged the "still powerful psychological pressures on a declarant to be truthful when death is imminent." See 5 Wigmore, Evidence § 1443 (3d ed. 1940); McCormick, Evidence § 283 (2d ed. 1972). As petitioner state correctly points out, many criminal statutes could be traced back to Biblical times as well, such as murder statutes based on the commandment against murder and theft statutes as based on the commandment against stealing. Such challenges to these statutes as establishing religion is beyond the pale.
It is axiomatic that a state cannot pass a law to endorse or aid religion, and if the primary purpose of state action or law is to promote religion, that action or law is in violation of the First Amendment. Johnson v. Presbyterian Homes of the Synod of Florida, Inc., 239 So.2d 256 (Fla. 1970). Clearly that cannot be said of the dying declaration exception to hearsay in Florida. The trial court's attempt to cast the dying declaration rule as "clearly ecclesiastical in nature," must fall of its own weight.
Next, the trial court held that the dying declaration rule violates the Sixth Amendment to the United States Constitution and Article I, Section 16 of the Florida Constitution, as it denies an accused of the right to confront his accuser. This proposition has been soundly defeated by case law and authorities. According to Wharton's Criminal Evidence, § 316, (13th ed. 1972), "[t]he right of a defendant to be confronted with the witnesses against him is deemed satisfied on the theory that the witness who testifies to the dying declaration, and not the declarant, is the witness against the defendant, and hence the witness with whom the defendant is entitled to be confronted." Id. at pp. 122-23, citing widespread state case law authority in footnotes 51, 52.
*902 Two Supreme Court decisions in related cases are frequently cited to support the constitutionality of dying declaration rules in the context of a defendant's right to confrontation. The first is Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892), where the Supreme Court held, inter alia, that dying declarations were admissible against an accused. It did not expressly address a Sixth Amendment challenge, however. The case returned as Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895), wherein the court held that testimony of a deceased witness who testified at a former trial was admissible. While that case did not involve a dying declaration, the Court did acknowledge the admissibility of such a declaration in the context of a Sixth Amendment analysis.
Many of its [the constitution] provisions in the nature of a bill of rights are subject to exceptions, recognized long before the adoption of the constitution, and not interfering at all with its spirit. Such exceptions were obviously intended to be respected. A technical adherence to the letter of a constitutional provision may occasionally be carried further than is necessary to the just protection of the accused, and further than the safety of the public will warrant. For instance, there could be nothing more directly contrary to the letter of the provision in question than the admission of dying declarations. They are rarely made in the presence of the accused; they are made without any opportunity for examination or cross-examination, nor is the witness brought face to face with the jury; yet from time immemorial they have been treated as competent testimony, and no one would have the hardihood at this day to question their admissibility. They are admitted, not in conformity with any general rule regarding the admission of testimony, but as an exception to such rules, simply from the necessities of the case, and to prevent a manifest failure of justice. As was said by the chief justice when this case was here upon the first writ of error (146 U.S. 140, 152, 13 Sup.Ct. 50 [54]), the sense of impending death is presumed to remove all temptation to falsehood, and to enforce as strict an adherence to the truth as would the obligation of an oath. If such declarations are admitted, because made by a person then dead, under circumstances which give his statements the same weight as if made under oath, there is equal, if not greater, reason for admitting testimony of his statements which were made under oath.
Id. at 243-44, 15 S.Ct. at 340, 39 L.Ed. at 411. See also Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (acknowledging in general the admissibility of dying declarations notwithstanding the Sixth Amendment right of confrontation and cross examination).
Finally, the trial court cited as an "additional weakness in the dying declaration rule" the manner in which it purportedly shifted the burden of proof to the accused. The court looked to State v. Cohen, 568 So.2d 49 (Fla. 1990), in which the Supreme Court of Florida found a portion of the witness tampering statute unconstitutional. The court found that section 914.22(3), Florida Statutes (1985), impermissibly shifted the burden of proof to the defendant by creating an "affirmative defense" for the defendant to prove by a preponderance of the evidence.
To be sure, the dying declaration exception to hearsay in Florida does not similarly shift the burden of proof to the accused. It does not impose any affirmative defense of innocence on the defendant. It does allow evidence to be admitted in the absence of cross examination and confrontation of the declarant, but under justifications of public necessity and manifest justice, pronounced and approved since early common law, and by the United States Supreme Court and state courts throughout the nation. If evidence is available to impeach the declarant's reputation for truth and veracity, or to question the accuracy or basis for the statement, it may be admitted. Also, the party against whom a dying declaration is used has the right to testify on his own behalf to refute the dying declaration, to present corroborative witnesses *903 and any other evidence. It still remains the state's burden to prove guilt of the accused beyond a reasonable doubt.
The petition for writ of certiorari is granted. Also, this court sua sponte strikes from the caption of this case the Honorable J. Leonard Fleet, Circuit Court Judge in and for the Seventeenth Judicial Circuit.
ANSTEAD and DELL, JJ., concur.