COHEN, J.
 

 Appellant, Terrance Cobb, was convicted of first degree murder with a firearm and theft with a firearm in connection with his participation in the armed robbery of Ra-jón Davis. Although Cobb urges reversal on several grounds, we only address two arguments. Cobb contends the trial court impermissibly allowed evidence that permitted the jury to infer the results of a
 
 *208
 
 polygraph examination taken by Alexis Nurell. However, assuming the trial court erred, Cobb invited the error.
 
 See Jenkins v. State,
 
 380 So.2d 1042, 1044 (Fla. 4th DCA 1980);
 
 Mora v. State,
 
 964 So.2d 881, 883 (Fla. 3d DCA 2007). Cobb also argues that his Sixth Amendment right of confrontation was violated when the trial court allowed the responding officers to testify about Davis’ dying declarations. As discussed more fully below, we reject this argument and hold that a dying declaration is an exception to the Sixth Amendment’s Confrontation Clause.
 

 Alexis Nurell enlisted Darryl Rayshawn White to assist her in robbing Davis, a drug dealer with whom she had a prior relationship. White, in turn, recruited Cobb. Under the ruse that she wanted to buy drugs, Nurell arranged to meet Davis behind a park. When Davis approached the van, White and Cobb jumped out and began shooting, chasing him into Vondasa Brown’s yard where he was robbed and left to die. After White, Cobb, and Nurell fled, Davis made his way to Vondasa Brown’s front door where he rang the doorbell and began banging on her door. After calling 911, she went to her front door where Davis told her that he was going to die and to “tell them who did this.” Davis implicated Nurell and White in his shooting.
 

 Officers Railey, Harris, and Schardine arrived at the crime scene and observed Davis laying in Vondasa Brown’s doorway. Initially, Officers Harris and Schardine secured the area by walking around the perimeter of the residence. The officers then individually asked Davis what happened and who injured him. Davis named Cobb, White, and Nurell. While responding to the officers’ questions, Davis was bleeding, shivering, stated he was afraid he was going to die, and was drifting in and out of consciousness. One officer indicated that he was “injured to the point where his eyes were rolling in the back of his head and we had to keep shaking him to keep him awake.” Subsequently, Davis died.
 

 Prior to trial, Cobb’s motion to exclude Davis’ statements to the police was denied. The trial court found the statements were admissible as dying declarations. As he did below, Cobb argues that Davis’ dying declarations to the officers were inadmissible because they were testimonial and solely made under circumstances a reasonable person would believe would be used in a future prosecution. He also contends that Davis’ statement, that the shooting was payback for his romantic relationship with Nurell, should have been excluded because only that portion of a dying declaration relating to the
 
 res gestae
 
 is admissible, citing
 
 Malone v. State,
 
 72 Fla. 28, 72 So. 415, 416 (Fla.1916). This latter argument has not been preserved for review because Cobb did not object to it during trial,
 
 see Sanchez v. State,
 
 909 So.2d 981, 984 (Fla. 5th DCA 2005), and further, its admission was harmless error because the statement was not relevant to proving any element of the crimes charged.
 
 See Malone v. State,
 
 72 So. at 416 (harmful error in admitting portion of dying declaration that did not relate to
 
 res gestae
 
 where motive was material in the trial for first degree murder).
 

 In
 
 Crawford v. Washington,
 
 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the test for whether hearsay violates a defendant’s Sixth Amendment right of confrontation was changed from whether the de-clarant was unavailable and the hearsay statement bore adequate indicia of reliability,
 
 Ohio v. Roberts,
 
 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), to whether the hearsay statement was testi
 
 *209
 
 monial. If the statement was testimonial, then the Sixth Amendment requires the witness be unavailable and the defendant have had a prior opportunity for cross-examination.
 
 Crawford,
 
 541 U.S. at 68, 124 S.Ct. 1354. However, if the hearsay statement was nontestimonial, then the Confrontation Clause is not implicated and states are free to develop hearsay law as they see fit.
 
 Id.
 

 Crawford
 
 did not define the parameters of what qualified as “testimonial,” but stated, “at a minimum,” it applies to “prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.”
 
 Id.
 
 In
 
 Davis v. Washington,
 
 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the Supreme Court was presented with the issue of which statements made during the course of a police interrogation were testimonial. It held that statements were not testimonial when made under circumstances objectively indicating that the primary purpose of the interrogation was to enable the police to meet an ongoing emergency. 547 U.S. at 822, 126 S.Ct. 2266. However, if the circumstances objectively indicated that the primary purpose of the interrogation was “to establish or prove past events potentially relevant to later criminal prosecutions,” the statements were testimonial.
 
 Id.
 

 In the case at bar, the officers’ questions were not designed to enable them to meet an ongoing emergency. Davis was only questioned after the officers conducted “a cursory search of the property to make sure there were no suspects on the scene.” No officer testified to any circumstances indicating that there was an ongoing emergency, other than addressing Davis’ injuries. Thus, Davis’ statements to the officers were testimonial. This is reinforced by the fact that he lay on the porch for several minutes talking to Vondasa Brown before the officers arrived.
 
 See State v. Lewis,
 
 235 S.W.3d 136, 147 (Tenn.2007) (finding victim’s statements to investigating officers testimonial where he initially talked to two neighboring store employees prior to police arriving, assailant had fled crime scene, and 911 call had already been made). Because Davis’ statements were testimonial, the issue is whether a testimonial dying declaration is an exception to Crawford’s requirement of witness unavailability and a prior opportunity for cross-examination. Our analysis begins with
 
 Crawford.
 

 In
 
 Crawford,
 
 541 U.S. at 56 n. 6, 124 S.Ct. 1354, the Supreme Court noted that the lone historical exception to the Sixth Amendment’s right of confrontation was dying declarations. Finding it unnecessary to determine whether a dying declaration was an exception, the court stated, “If this exception must be accepted on historical grounds, it is
 
 sui generis.” Id.
 
 Neither this dicta, nor
 
 Williams v. State,
 
 947 So.2d 517 (Fla. 3d DCA 2006),
 
 [1]
 
 holds, as the State suggests, that dying declarations are an exception to the Sixth Amendment. To determine whether dying declarations are an exception, we must examine the common law at the time the Sixth Amendment was adopted. As
 
 Crawford,
 
 541 U.S. at 54, 124 S.Ct. 1354, directs, the Confrontation Clause “is most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding.”
 

 
 *210
 
 Challenges to dying declarations as vio-lative of a defendant’s right of confrontation are neither novel, nor new. Rather, these challenges have been revived in the wake of
 
 Crawford.
 
 In
 
 Mattox v. United States,
 
 156 U.S. 237, 238, 15 S.Ct. 337, 39 L.Ed. 409 (1895), one of the issues addressed was whether the defendant’s right of confrontation was violated when the testimony of two witnesses from his first trial was presented by transcript at his second trial because they were dead. In addressing this issue, the Supreme Court noted that it had to interpret the Sixth Amendment in light of the law as it existed when the amendment was enacted.
 
 Id.
 
 at 243, 15 S.Ct. 337. The Supreme Court further stated that many of the provisions in the Bill of Rights were “subject to exceptions, recognized long before the adoption of the constitution, and not interfering at all with its spirit.”
 
 Id.
 
 As one example, the Supreme Court used dying declarations. Noting that dying declarations are rarely made in the presence of the accused and are not subject to cross-examination, it stated:
 

 [Y]et from time immemorial they have been treated as competent testimony, and no one would have the hardihood at this day to question their admissibility. They are admitted, not in conformity with any general rule regarding the admission of testimony, but as an exception to such rules, simply from the necessities of the case, and to prevent a manifest failure of justice.
 

 Id.
 
 at 243-44,15 S.Ct. 337.
 

 In
 
 People v. Corey,
 
 157 N.Y. 332, 51 N.E. 1024, 1028-29 (1898), it was argued that dying declarations were no longer admissible “because the Code of Criminal Procedure ... provides that [a defendant] is entitled ‘to be confronted with the witnesses against him in the presence of the court....’” In rejecting this argument, the court stated:
 

 The right of the accused to be confronted with the witnesses against him has always been a part of the bill of rights, and yet dying declarations have been received in evidence for time out of mind. The legislature doubtless intended to confer upon a defendant in a criminal action the right to be confronted with any living witnesses against him. It is upon this ground that the objection to the introduction of such declarations in evidence against a defendant, based on his constitutional right to be confronted with the witnesses against him, has been uniformly overruled in those jurisdictions where such constitutional provisions are in force. It is invariably held that the deceased is not a witness, within the meaning of such a provision of the bill of rights, and that it is sufficient if the defendant is confronted with the witness who testifies to the declaration.
 

 Id.
 
 at 1029.
 

 In
 
 Hill v. Commonwealth,
 
 43 Va. 594 (Va.Gen.Ct.1845), the court was faced with the issue of whether the admission of the victim’s dying declarations violated the accused’s right of confrontation. Noting that if the answer was yes, “then for nearly 70 years past, the Courts of this Commonwealth have been in the constant practice of violating the bill of rights in a most important particular.”
 
 Id.
 
 In substantively addressing this question, the court rejected the contention that the right of confrontation was a new legal principle brought into existence as “the offspring of American liberty.”
 
 Id.
 
 Finding that this right was secured by the Magna Carta and “familiar to
 
 Virginia
 
 in her colonial condi
 
 *211
 
 tion,” the court proceeded to look at the state of the common law as it related to dying declarations.
 
 Id.
 
 The court stated:
 

 Without attempting to ascertain the antiquity of the earliest decisions of the British Courts affirming the rule, it is sufficient to state, that long anterior to the year 1776, the period of the declaration of the bill of rights, the rule of evidence was well established. And it is remarkable, that in all the commentaries it underwent in
 
 England,
 
 it was never supposed that the rule was a violation of the rights of the subject as secured by
 
 Magna Chart a
 
 [sic]. The rule is one of necessity. It is analogous to that which authorizes the admissions of the prisoner to be given in evidence against him. In that case, he is not the witness; neither is the dead man. His declarations are facts to be proved by witnesses, who must be confronted with the accused. We are therefore of opinion, that the admission of dying declarations as evidence, is not repugnant to the bill of rights.
 

 Id. Also see Anthony v. State,
 
 19 Tenn. 265 (Tenn.1838) (indicating that the admissibility of dying declarations was not prevented by the passage of the state constitution granting each defendant the right to confrontation because such provision did not introduce a “new principle,” but only preserved the right previously secured in Great Britain);
 
 Campbell v. State,
 
 11 Ga. 353 (Ga.1852), criticized on other grounds in
 
 Smith v. State,
 
 179 Ga. 791, 177 S.E. 711 (1934) (noting that the right of confrontation and admissibility of dying declarations have existed “since the trial of Ely, in 1720, and are considered of equal authority”).
 

 These cases of historical vintage invite two conclusions about how the common law treated dying declarations. First, dying declarations were a recognized exception to the right of confrontation, and were admitted out of necessity to prevent manifest injustice. Second, the Sixth Amendment’s right of confrontation is satisfied as long as the defendant had the opportunity to cross-examine the witness who testified about the dying declaration. Cases of more recent vintage have, by and large,
 
 [2]
 
 also concluded that dying declarations are an exception to the Sixth Amendment, but the rationales have varied.
 

 In
 
 People v. Monterroso,
 
 34 Cal.4th 743, 22 Cal.Rptr.3d 1, 101 P.3d 956, 972 (2004), the court concluded that dying declarations were a common law exception, and therefore posed no conflict with the Sixth Amendment.
 
 Also see State v. Calhoun,
 
 189 N.C.App. 166, 657 S.E.2d 424 (2008);
 
 People v. Gilmore,
 
 356 Ill.App.3d 1023, 293 Ill.Dec. 323, 828 N.E.2d 293 (2005). In
 
 State v. Lewis,
 
 235 S.W.3d at 148, the court found that dying declarations were “deeply entrenched in the legal history of this state ... [and] this single hearsay exception survives the mandate of
 
 Crawford
 
 regardless of its testimonial nature.” In
 
 State v. Jones,
 
 287 Kan. 559, 197 P.3d 815, 822 (2008), the court relied on dicta in
 
 Giles v. California,
 
 — U.S. -, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008), to conclude that the “Supreme Court would confirm that a dying declaration may be admitted into evidence, even when it is testimonial in nature and is unconfronted.”
 

 
 *212
 
 Based on the historical cases addressing this issue, we conclude that dying declarations are an exception to the Sixth Amendment’s Confrontation Clause. Accordingly, allowing the officers to testify about Davis’ dying declarations did not violate Cobb’s right of confrontation. Furthermore, Cobb’s right of confrontation was not violated because he had the opportunity to cross-examine the officers about the dying declarations.
 
 [3]
 
 We believe this conclusion is bolstered by
 
 State v. Weir,
 
 569 So.2d 897 (Fla. 4th DCA 1990), quashed on other grounds by
 
 Weir v. State,
 
 591 So.2d 593 (Fla.1991).
 

 In
 
 State v. Weir,
 
 569 So.2d at 897, the court granted a petition for certiorari to review a trial court’s invalidation of the dying declaration hearsay exception. Relevant to the instant case, the trial court found the dying declaration hearsay exception was unconstitutional because it violated a defendant’s right to confrontation under the Sixth Amendment.
 
 Id.
 
 at 899. In determining that this ruling departed from the essential requirements of law, the court quoted Wharton’s Criminal Evidence § 316 (13th ed. 1972), for the proposition that the right of confrontation was satisfied when the witness who testified about the dying declaration was confronted, and
 
 Mattox v. United States,
 
 156 U.S. 237, 15 S.Ct. 337, to support the proposition that dying declarations were an exception to the Sixth Amendment.
 
 Id.
 
 at 901-02. Although quashing on the basis of lack of jurisdiction, the supreme court stated, “The district court correctly analyzed the law in this field, and we adopt its discussion on the law of dying declarations as our own.”
 
 Weir v. State,
 
 591 So.2d at 594.
 

 Accordingly, we affirm.
 

 AFFIRMED.
 

 MONACO, C.J., and SAWAYA, J„ concur.
 

 [1]
 

 . Contrary to the State's assertion,
 
 Williams v. State,
 
 947 So.2d 517, 521 (Fla. 3d DCA 2006), expressly declined to decide whether the victim's statements were testimonial or whether dying declarations passed constitutional muster.
 

 [2]
 

 . The court in
 
 United States v. Jordan,
 
 2005 WL 513501 at *4 (D.Colo.2005), concluded that dying declarations were inadmissible in light of
 
 Crawford
 
 because their reliability was suspect and the exception was not in existence at the time the Bill of Rights was drafted.
 

 [3]
 

 . Even if we reached a contrary conclusion, any error in admitting Davis' dying declarations would have been harmless based on Nurell's testimony implicating Cobb.
 
 See Blanton v. State,
 
 978 So.2d 149, 156 (Fla.2008)
 
 (Crawford
 
 violation is subject to harmless error review).